## PLANT vs. CONDIT.

Where the vendor of personal property warrants it to be sound, and it was unsound at the time, the purchaser may either affirm the contract and bring an action on the warranty , or he may rescind the contract, and sue for and recover the purchase money, if paid, or if not paid, he may rescind the contract and resist the recovery of the consideration, or affirm the contract and set up the false warranty by way of recoupment, or abatement of the amount sought to be recovered.

The vendor is liable to an action for false warranty, or to the defense of recoupment on a false warranty, whether he knew the property to be unsound at the time or not.

So, where there is no warranty of soundness of the property, but the seller makes false and fraudulent representations as to its soundness, the purchaser has the same

election and remedy as in cases of false warranty; but in actions for false representations and deceit, it must be shown that the vendor knew the representations to be false at the time of making them—this principle was not involved in *Johnson et al. vs. McDaniel*, 15 *Ark*. 113.

Where a contract of sale of personal property is reduced to writing, it is the best and highest evidence of what the contract really was; but if the vendor induce the vendee to accept a bill of sale without warranty, by false and fraudulent representations as to the soundness of the property sold, he is liable to an action for such fraud, and the vendee will not be precluded by the written contract from proving the fraud by parol.

### Appeal from White Circuit Court.

Hon. WILLIAM C. BEVENS, Circuit Judge.

BYERS & STILLWELL for the appellant.

Appellant, by the form of action adopted, affirmed the contract, and sought to recover the damages resulting from the deceit. Consequently an offer to return the slave was not necessary. *Johnson & Grimes vs. McDaniel* 15 *Ark.* 117.

A purchaser is never bound to return the subject of the purchase, unless required to do so by the stipulations of the contract, or unless he wishes to disaffirm the contract, and recover back the money he has paid. 12 *Wendell Rep.* 576.

It is immaterial whether appellee, when he affirmed that Daniel was sound, knew of his unsoundness, or not. The unsoundness being proven, his knowledge is immaterial. 15 *Ark.* 115; *Williamson vs. Allison* 2 *East.* 446.

Where parties make a contract, and one subsequently gives to the other written evidence of his undertaking, the other is not precluded from going behind the writing, and showing by parol the real terms of the contract though entirely inconsistent with the writing. 3 *Pet. Rep.* 219.

ROSE for the appellee.

Where, on the sale of articles of personal property. a bill of sale was given describing the articles sold, and receipting for the price, but containing no warranty, the purchaser could not

give parol evidence to prove a warranty.   *Munford vs. Mc-Pherson,* 1 *J. R.* 414; *Wilson vs. March,* 1 *J. R.* 503; *Salem India Rubber Co. vs. Adams,* 23 *Pick.* 256; *Lamb vs. Crafts,* 12 *Metc.,* 353; *Hogins vs. Plympton,* 11 *Pick.* 99, 100; *Cow. & Hill's notes, to* 3*d Phil. Ev. n.* 300, *p.* 194; 4 *Phil. Ev., Cow. & Hill's notes part* 2, *p.* 596; 1 *Smith's Lead. Cas.* 234; 24 *Wend.* 260.

Untrue representations innocently made are no grounds for vitiating a contract, nor for supporting an action for deceit.

2 *Kent.* 485, *n.* 1, *and text.   Ib.* 489.   *Ib.* 481, *n.* 1; 2 *Gr. Ev. Sec.* 230, *a.*

1 *Sug. Vend., Introduction, Secs.* 3 *and* 8.   2 *Ib. Ch. XII., Sec.* 2, *paragraph* 19; *Smith's Merc. Law,* 605; *Ind. R. Co. vs. Adams,* 23 *Pick,* 265; *Tryon vs. Whitmarsh,* 1 *Metc.* 1; *Young vs. Carell,* 8 *J. R.* 25; *Cunningham vs. Spier,* 13 *J. R.* 392; *Massie vs. Cranford,* 3 *Mon.* 218; *Carstarphen vs. Graves.* 1 *Marsh,* 436; *Bacon vs. Brown,* 3 *Bibb;* 35; *Hickman vs. Hanley,* 4 *Ib.* 359; *Scott vs. Perrin,* 4 *Bibb.* 360; *Broom's Legal Maxims,* 282; *Cauley vs. Williams,* 6 *Barbour's S. S. R.* 563; 2 *Kent.* 479*n. c. Stone vs. Denney,* 4 *Metc.* 151.

In order to recover in an action of deceit, the plaintiff must show an offer to return the property within a reasonable time after the discovery of the unsoundness, or circumstances to excuse him from doing so,   2 *Kent* 480; 3 *Phill. Ev. Cow. & Hill's notes,* 105, 101; 29 *Eng. Com. Law & Eq. R.* 220.   *Thornton vs. Wynn* 12 *Wheat.* 183; 3 *Metc.* 550; 18 *Pick.* 95.   And this doctrine was expressly declared to be applicable to an action of deceit by this court, in the case of *Johnson & Grimes vs. McDaniel* 15 *Ark. p.* 115, 116.   The direct adjudication of this court on this point should set this matter at rest.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

Plant, the plaintiff in error, brought an action on the case against Condit, the defendant, for false warranty and deceit in an exchange of slaves.

The declaration contained five counts.   The first and second counts alleged a false warranty of the soundness of a slave

named *Daniel,* which the plaintiff received of the defendant in exchange for a woman. The other counts alleged false and fraudulent representations by the defendant in relation to the soundness of *Daniel.*

The cause was tried on the general issue, a verdict for the defendant, and a motion for a new trial overruled.

The court gave eight instructions on the motion of the plaintiff. He also moved an additional instruction, as follows ·

(9) " That it is not necessary, to entitle the plaintiff to recover, that he should prove any offer to return the slave Daniel to the defendant, previous to the bringing of this suit:"

Which the court refused to give as moved; but, of its own motion, gave the instruction, as applicable to the first and second counts of the declaration—the counts alleging a false warranty of the soundness of the slave *Daniel*

The court, also of its own motion, instructed the jury as follows :

" Some of the counts of the plaintiff's declaration are grounded on an affirmance of the contract of the exchange of slaves, and seek to recover such damages as it is alleged he sustained by reason of the false and fraudulent warranty made by defendant to the plaintiff; and in this case it will be wholly immaterial to the jury whether they find from the evidence that there was a breach of warranty, or that there was a warranty made deceitfully, and with a fraudulent design upon the plaintiff; in either event, such finding of the evidence by the jury will entitle the plaintiff to a verdict on the counts upon the contract ; and the measure of damages in such case would be the difference between the value of the negro if sound, and the real value of the negro at the time of the contract :

" And secondly; the residue of the counts in the plaintiff's declaration proceed upon the ground of deceit and fraudulent representations made by the defendant to the plaintiff in the exchange of negroes ; and before the plaintiff can recover under these counts in his declaration, it devolved on him to show that he tendered the negro back to the defendant within a reason-

able time, or offered to do so, or in default thereof, show some such circumstances as in their judgment amount to an excuse for not doing so. If under these rules, and from the evidence, the jury should find for the plaintiff, the measure of damages will be the amount paid for the negro by the plaintiff, with interest from the time it was paid."

It is believed that the following rules, in relation to the remedies of purchasers of personal property, for false warranty, deceit, etc., may be regarded as settled by the current of adjudications in our country:

Where the vendor of personal property warrants it to be sound, and it turns out to have been unsound at the time of the sale and warranty, the purchaser may either keep the property, thereby affirming the contract, and bring an action on the warranty; or he may rescind the contract by returning, or offering to return, the property, in a reasonable time after discovering its unsoundness (or showing a sufficient legal excuse for failing to do so), and sue for and recover back the purchase money, or consideration given for the property, if it has been paid.

Where the consideration has not been paid, the purchaser may make his election to rescind the contract as above, and resist the recovery of the consideration by the vendor, or affirm the contract, keep the property, and when sued for the consideration, set up the false warranty by way of *recoupment,* or abatement, of the amount sought to be recovered by the vendor. *Franklin et al. vs. Long,* 7 *Gill & John.* 419; *Wright vs. Findley,* 21 *Geo.* 67; *Ward vs. Reynolds,* 32 *Ala.* 39 ; *Chandler vs. Lopus,* 1 *Smith's Leading Cases* 77, *and notes; Withers vs. Green,* 9 *How. U. S.* 233; *Harrington vs. Stratton,* 22 *Pick.* 511; *Desha's ex'rs vs. Robinson, adm'r,* 17 *Ark.* 228; *Williams vs. Miller,* 21 *Ark.*

Where there is a warranty of the soundness of the property, and it turns out to be unsound, the vendor is liable to an action for false warranty, or to the defence of *recoupment* for false warranty, whether he knew the property to be unsound at the

time of the warranty or not. *Williamson vs. Allison*, 2 *East* 446; *Morris vs. Rippy*, 4 *Jones* 533; *Johnson et al. vs. McDaniel*, 15 *Ark.* 115; 1 *Smith's L. C.* 77, and notes.

The rule as to the measure of damages in cases of breach of warranty was stated in *Tatum vs. Mhor*, 21 *Ark.*

Where there is no warranty of the soundness of the property, but the seller makes wilfully false and fraudulent representations as to its soundness, the purchaser may, if he has paid the purchase money, elect, as in case of false warranty, to rescind the contract, by returning the property, etc., bring suit to recover back the purchase money, or to affirm the contract of sale, keep the property, and bring an action on the case against the seller to recover damages for the false and fraudulent representations. Or if the purchase money has not been paid, the purchaser may elect to rescind the contract of sale as above, and resist the recovery of the purchase money *in toto*, or to affirm the contract, keep the property and to an action for the purchase money, set up the false and fraudulent representations by way of recoupment, etc. *Withers vs. Green*, 9 *How.* 233; *Harrington vs. Stratton*, 22 *Pick.* 511, *Ward vs. Reynold's* 32 *Ala.* 393; *Witney vs. Allaire* 4 *Denio* 557; *Same case* 1 *Hill* 485; *Same case* i *Comstock* 305; *Newberry vs. Garland* 31 *Barbour Sup. C. R.* 128; *Story on Sales Sec.* 458, *a*; *Sedgwick on Damages* 295; *Rotan vs. Nichols* 21 *Ark.*; *Sumner vs. Gray* 4 *Ark.* 472.

In actions for fraudulent representations, it must be shown that the vendor knew the representations to be false at the time of making them. In other words, the *scienter*, as it is termed must be proven. *Same authorities*.

In *Johnson et al. vs. McDaniel*, 15 *Ark.* 113, it was remarked by the CHIEF JUSTICE, who delivered the opinion, that "if treated as an action on the case for deceit, or breach of the general duty of fairness required of men in their dealings, which would avoid the contract, it is obvious that the plaintiff here must have failed for want of proof of the *scienter* in the defendants, *or of any effort on his part to return the slave.*" And this remark is relied on by the counsel for defendant in error, to sustain the

instructions given by the court below, of its own motion, in the case now before us, in regard to proof of the return of the slave, under the counts for false representations. But the remark of the Chief Justice, referred to, was not an adjudication by the court upon the point. The question, whether the purchaser of a slave is bound to return or offer to return him, before he can bring an action for deceit or false and fraudulent representations, by the seller, as to his soundness, was not before the court in that case. The action was upon a *false warranty* of the slave.

We think, upon principle and authority, the purchaser has the same right to affirm the contract of sale, by keeping the property, and to bring his action to recover damages sustained by him in cases of false and fraudulent representations, as in cases of false warranty of soundness, etc., and it is better that there should be uniformity in the rule.

The case of *Withers vs. Green*, was an action on a bond given for the price of two fillies. The defendant pleaded, by way of recoupment, that false and fraudulent representations were made in relation to the soundness, pedigree, etc., of the animals; and the court held that he was not bound to return, or to offer to return them, to entitle him to such defence.

In *Harrington vs. Stratton*, it was held that in an action on the original contract of sale, or on a note for the purchase money, it was competent for the defendant to show that false representations were made as to the quality or character of the article sold, to reduce the demand of the plaintiff, although the property had not been returned, etc. In that case, false representations were made, in an exchange of horses, in relation to the soundness of the horse which the plaintiff let the defendant have.

In *Allaire vs. Whitney*, 1 *Hill* 486, the court said: "It is entirely settled that when property is purchased on the faith of the fraudulent misrepresentations of the vendor, the vendee has an election either to repudiate the contract, or take the benefit of it, and when sued for the price agreed, to have deducted

from it the damages which he has sustained in consequence of the fraud. This has never been denied. That he receives a delivery or takes possession of the property sold, after discovering the fraud, makes no difference in principle. * * * * It is not necessary to deny that where a vendee takes or holds possession after he has discovered the fraud of his vendor, etc., he shall not be allowed to rescind the contract; in other words, to say, as he always may do in the first instance, that the whole is void. * * * * When a man is drawn into a contract of sale or demise by fraud, a right of action attaches immediately, as much so as if trespass had been committed against him; and though he may affirm the transfer of interest and take the property, yet waiver is no more predicable of the cause of action, than where a man receives a delivery of goods which have been tortiously taken from him. The vendor or lessor was a wrong doer when he committed the fraud; and no act of the injured party, short of a release or satisfaction, will bar the remedy, though it may mitigate the amount of damages."

The principles of this case were affirmed by the Supreme Court of New York in 4 *Denio* 557, re-affirmed by the Court of Errors and Appeals in 1 *Comstock* 304, and again asserted by the Supreme Court in *Newberg vs. Garland*, 21 *Barb.* 128.

Mr. STORY, in his work on *Sales*, sec. 458, a, says, " Where the vendee has been fraudulently deceived by the vendor, he may affirm the contract and sue for damages, or he may rescind it utterly. So, also, if, after his affirmance of the contract, the other party bring an action against him on the contract, he may recoup the damages sustained by him on account of the fraud"— citing *Whitney vs. Allaire*, 4 *Denio* 555.

So Mr. SEDGWICK, in his work on *Damages*, p. 295, says: " If the vendor of a chattel make fraudulent representations in regard to the value of the property, or is otherwise guilty of fraud in making or performing the contract, to the injury of the vendee, the latter has his election of remedies; he may stand to his bargain even after he has discovered the fraud, and recover damages on account of it, or he may rescind the con-

tract and recover back what he has paid; or again, he may wait till the vendor bring his action, and then recover the damages he has sustained by the fraudulent act"—citing a number of authorities, and among them *Whitney vs. Allaire.*

In *Ward vs. Reynolds*, 32 *Ala.* 393, the court said: "If personal property is valueless at the time of the sale, on account of its variance from the quality or character imputed to it by the fraudulent representations of the seller, the defence of the purchaser would certainly go to the entire purchase money. * * * * Whether the property is valueless or not, the defrauded purchaser may rescind the contract. If the property is not valueless, and he does not rescind, he is entitled to the deduction of an amount equal to the difference between the value of the property on the supposition of its correspondence with the representations and its real value."

So in the notes to *Chandler vs. Lopus*, 1 *Smith's L. C.*, it is said: "If the vendor make wilful misstatements as to the condition of the property sold, or sell it as other than he knows it to be, and thereby induce the completion of the purchase, the contract will be voidable at the option of the vendee, who may either avoid it by returning the goods, and bring an action on the case for deceit, or affirm it by keeping them, and then give the fraud in evidence to diminish, or defeat a recovery, in a suit brought to enforce the payment of the purchase money." *p.* 252.

Again: "Even where a vendee in a sale vitiated by fraud, has affirmed the contract by using the goods, and has paid the purchase money, he is not left without remedy, for he may still have recourse to an action on the case for deceit, and recover damages for whatever injury he has sustained, from being led into a disadvantageous purchase, by the wilful misstatements of the vendor. In order, however, to sustain this form of action, it is essentially necessary, that the *scienter* should be proved; and it will not be sufficient to show that the defendant made statements which he did not know to be true, and which, in point of fact, were false." *Ib. p.* 253.

In the case before us, all of the counts in the amended declaration are in affirmance of the contract, and it was not necessary for the plaintiff to aver or prove a return or offer to return the slave Daniel to the defendant.

The court should have given the 9th instruction as moved by the plaintiff; and the second paragraph of the instruction given by the court to the jury, of its own motion, was erroneous. So the court erred in giving the 4th clause of the 3d instruction moved by the defendant—" that before the jury can find in favor of plaintiff on the ground of deceitful and fraudulent representations of the defendant, they must find that the plaintiff offered to return the negro within a reasonable time after discovering his unsoundness," etc.

Among others, the court gave the following instruction to the jury, at the instance of the defendant:

1. "If the jury find, from the evidence, that there was a written contract or bill of sale between the plaintiff and defendant, for the sale or exchange of the negro in controversy; and that it contains no warranty of soundness in body, then they must find in favor of the defendant on the contract; they will disregard all evidence of what was the contract, except what the writing itself contains."

It appears from the evidence that the defendant gave the plaintiff a bill of sale for the boy *Daniel*, warranting him to be sound in *mind*, but containing no warranty of the soundness of his *body*.

There was testimony introduced on the trial conducing to prove that the defendant represented the boy Daniel to be sound, otherwise than that he was a *dirt eater*, or had been a *dirt eater*, etc. There was also some evidence tending to prove that he was afflicted with *scrofula*, softening of the brain, and otherwise diseased, before the exchange. The testimony is conflicting as to the representations made by the defendant to the plaintiff in relation to the soundness of the negro, etc.

The parties having reduced their contract to writing, the bill of sale was the best and highest evidence of what their con-

tract really was. But if the defendant induced the plaintiff, by false and fraudulent representations as to the soundness of the negro, to accept a bill of sale without warranty that the negro was sound in *body*, he was liable to an action for such fraud, and the plaintiff would not be precluded by the contents of the bill of sale from proving such fraud by parol. *Hooper vs. Chism*, 13 *Ark.* 498; *Tune vs. Rector*, ad. 21 *Ark.* 284.

The counsel for the appellant have made no specific objections to any of the other instructions given at the instance of the appellee.

The court permitted the witness Oneil to state, at the instance of the defendant, and against the objection of the plaintiff below, that the reputation in the neighborhood, before the exchange of slaves by the parties, was that Daniel was unsound.

The counsel for the appellee has not insisted that neighborhood reputation was competent evidence of the unsoundness of *Daniel*, but he insists that the appellant could not have been prejudiced by the admission of such evidence, as it tended to prove what he himself was attempting to establish—the unsoundnesss of the negro.

We suppose that the appellee offered evidence of the neighborhood reputation of the unsoundness of the negro for the purpose of showing that the appellant had knowledge that he was unsound at the time of the exchange, and was, therefore, not deceived by the representations of the appellee in relation to his soundness.

In that view, the admission of the evidence may have been prejudicial to the appellant.

We shall pass no opinion upon the sufficiency of the evidence to sustain the verdict, as the judgment must be reversed for the errors of the court above indicated, and the cause remanded for a new trial.