RALEIGH SAVINGS BANK AND TRUST COMPANY v. M. T. LEACH AND W. H. PACE, TRUSTEE.

(Filed 27 October, 1915.)

**1. Mortgages—Trusts and Trustees—Commissions—Agreements—Courts.**

Where the deed in trust specifies the compensation to be paid the trustee as a certain per cent of the "proceeds" of the sale of lands made in executing the power thereof, and there is no allegation of fraud, undue influence or usury, the agreement of the parties will control, and the courts will not interfere, or reduce the amount of the trustee's compensation as specified in the deed; and by the word "proceeds," upon which the percentage as commissions is calculated, is meant the amount the lands sold for. *Loftis v. Duckworth,* 146 N. C., 344, cited and distinguished.

**2. Mortgages—Trusts and Trustees—Sales—Advertisement — Costs —"Thirty Days"—Statutes.**

Where a mortgage of lands provides that notice of the sale under the power thereof given in the conveyance shall be published in a newspaper, etc., "for a time not less than thirty days prior to the date of sale," and the language employed closely follows the provision of Revisal, section 641, it is *Held,* that by the agreement entered into by the parties the advertisement should be inserted in the newspaper once a week for four consecutive weeks, and not consecutively for thirty days, and an allowance made in the Superior Court for an advertisement for thirty consecutive days was erroneous.

**3. Mortgages—Trusts and Trustees—Attorney's Fees.**

Where a trustee has fully executed his trust except the payment of the proceeds of a sale of lands made in pursuance thereof to the parties entitled, and the funds are attached in his hands by a claimant thereof, he is not interested in the result of the action except to hold the trust funds until the matter is determined and to state the amount thereof; and there being no necessity for him to employ an attorney, no attorney's fees are allowable to him when he has employed one.

WALKER and BROWN, JJ., concurring in part.

APPEAL by defendants from *Daniels, J.,* at the May Term, 1915, of WAKE.

Appeal from an order allowing W. H. Pace, trustee, as commissions the sum of $350, his attorney, John Boushall, $25, and cost of advertising, $69.30, and the controversy is wholly between the defendants Leach and Pace.

Prior to 3 May, 1915, the defendant M. T. Leach borrowed from the Raleigh Savings Bank and Trust Company the sum of $8,000, and to secure the payment of the same executed a deed of trust to the defendant W. H. Pace upon a storehouse and lot on the east side of Wilmington Street in the city of Raleigh. Default having been made in the payment of the said note and interest, the said Pace, who was the regular attorney of the Raleigh Savings Bank and Trust Company, being requested by the said trust company, advertised the said property for sale at the courthouse door in the county of Wake, and offered the same for sale on 3 May, 1915, when and where Miss Dixie Leach purchased the said property at and for the sum of $15,700.

The above entitled action was then brought on 7 May, 1915, by the plaintiff, and the lot conveyed to secure the debt and the surplus in hands of trustee were attached by the plaintiff.

The said trustee rendered bill as follows: Principal, $8,000; interest, $416; advertising, $69.30; auctioneer's fee, $2; trustee's commissions, $471, as of date 3 May, 1915; and the said Leach having filed objection to the allowance of commissions, $471, advertising, $69.30, and the said Pace having requested the court to allow an attorney's fee, his Honor, *Judge Daniels,* fixed it at $25. It appeared before his Honor that the said W. H. Pace, as trustee, prepared the advertisement, · had it inserted in the *News and Observer,* had it posted at the courthouse door and three other public places; spoke to two or three persons to attend the sale, attended the sale on 3 May, 1915, which sale occupied one-half or three-quarters of an hour; prepared the deed to Mr. Vass, assignee of Miss Dixie Leach, and made demand upon the bidder, Miss Dixie Leach, for the payment of the purchase price. These were all of the services rendered by Mr. Pace as trustee, and in the above-entitled action he filed an answer by his attorney, John Boushall.

The deed of trust contains the following stipulations: If the said Leach shall fail or neglect to pay the interest on said note as the same shall hereafter become due, or both principal and interest at the maturity of said note, or any part of either the interest or principal when due and payable, or shall fail for six hours to keep the buildings on said property insured as below required, or shall fail for thirty days to pay any taxes or assessments on said property as below required, then, and in either of such events, the whole of said note shall be considered due and payable, regardless of the date of maturity expressed on the face

of said note, and it shall be lawful for the said Pace, trustee, his executors, administrators or assigns, to advertise the said hereby granted property for sale by notice published in some newspaper published in Raleigh, N. C., and by notice posted at the county courthouse door and three other public places in Wake County, N. C., for a time not less than thirty days prior to the date of sale, therein appointing a time and place of sale, and at such time and place to expose said land at public sale to the highest bidder for cash, and upon such sale to convey the same to the purchasers, and first retaining out of the proceeds of sale the costs of sale, including a commission of 3 per cent on the proceeds of sale, to pay to the holder of said note so much of the residue as may be necessary to pay off and discharge the same, and all interest then accrued and due thereon, together with such sums, with interest, as they may have paid out for taxes, assessment or insurance, as below allowed, and to pay the surplus, if any remain, to the said M. T. Leach, his executors, administrators or assigns.

It further appeared that the advertisement of the sale of the property appeared daily in the *News and Observer,* a newspaper published in the city of Raleigh, for thirty days.

Upon the foregoing evidence his Honor allowed W. H. Pace, as trustee, for his commissions, $350, allowed the *News and Observer* for advertisement, $69.30, and allowed John Boushall, as attorney of W. H. Pace, trustee, the sum of $25.

1. The defendant M. T. Leach excepted to the allowance of the sum of $350 to the trustee, upon the ground that the same was unreasonable for the service rendered by the trustee.

2. The defendant M. T. Leach excepted to his Honor's allowance of the advertisement in the *News and Observer,* as it was unnecessary to put said advertisement in said paper daily for thirty days prior to the day of sale, and that the amount of $3 was all that the court could allow for the advertisement.

3. The defendant M. T. Leach excepted to the allowance to the attorney of the trustee, $25—not upon the ground that the same was unreasonable, but that the fee of the attorney of the trustee could not be charged and retained by the trustee out of the proceeds of sale of the lot.

The defendant W. H. Pace, trustee, through his attorney, excepted to the allowance of only $350 to the trustee.

Both parties appealed.

*No counsel for plaintiff.*
*Manning & Kitchin and W. L. Watson for defendant Leach.*
*John H. Boushall for defendant Pace.*

ALLEN, J.   1. Did the court have the power to fix the compensation of the trustee for executing the power of sale, or is the compensation determined by the stipulation in the deed of trust?          ·

It is clearly recognized in *Howell v. Pool,* 92 N. C., 453, that the court can determine what is a reasonable allowance for services rendered by a trustee, although the amount is specifically provided for in the deed of trust, when the court has taken jurisdiction of the cause and the parties, and the sale is made under its decree; but while there are expressions in *Clark v. Hoyt,* 43 N. C., 222, and *Duffy v. Smith,* 132 N. C., 38, indicating that this power does not exist, in the absence of evidence of fraud or undue influence, or that it is a cover for usury, when the sale is made under the power in the trust deed, we have not been able to find a case in our Reports directly deciding the question.

In *Boyd v. Hawkins,* 17 N. C., 329, which is relied on by the defendant Leach, it appeared that the relation of trustee and *cestui que trust* already existed under former conveyances, when the agreement for compensation to the trustee was inserted in a subsequent deed of trust, and the decision rests upon the ground that the trustor was in the power of the trustee.

The authorities elsewhere generally support the position that the parties have the right to stipulate in the deed of trust how much shall be paid for the services of the trustee, and that when there is no fraud nor undue influence, and the contract is not a cover for usury, and is not so large as to be oppressive, that the contract of the parties will be enforced and cannot be disturbed by the courts. "The mortgage or trust deed may provide for compensation to the mortgagee or trustee, and then the agreement of the parties will, of course, govern."   Jones on Mortgages (6 Ed.), sec. 1923.

"If the instrument creating the trust fixes the compensation, or declares that none is to be received, or where the trustee, previous to his acceptance of the trust, makes a valid and binding agreement with the *cestui que trust* as to the compensation which he is to· receive, the compensation fixed by the instrument, or by such agreement, will be the rule of allowance to the trustee, and cannot be reduced by the court."   39 Cyc., 494.

"The compensation of the trustee may be provided for in the trust instrument or by contract between the seller and the trustee.   In that case, by the acceptance of the trust, the trustee will become bound to be satisfied by the amount there specified."   7 Mod. Am. Law, 332.

"The acts of Assembly which settle the allowance to be made to persons sustaining fiduciary relations, for their care and trouble in the administration of their trusts, do not supersede the right of parties who are thereto legally competent to make their own contracts in this particular.   If they agree upon a different form or rate of compensation,

their agreement will constitute the law of the particular case, and as such be enforced." *College of Charleston v. Willingham,* 30 S. C. Eq., 195.

"Where the instrument creating the trust provides that the trustee shall have a compensation for his services in executing the trust, such provision will be enforced. If the instrument declares the rate of compensation it must be followed." *In re Schell,* 53 N. Y., 263, 265.

"Where the instrument creating the trust, however, fixes a different compensation, or declares that none is to be allowed, or where the trustee, previous to the acceptance of the trust, makes a valid and binding agreement with the *cestui que trust* as to the rate of compensation to be allowed for his services in the execution of the trust, that, of course, must prevail." *Meacham v. Sternes,* 9 Paige's Chancery Reports (N. Y.), 398, 404.

"We are of opinion . . . that the court had no more right to increase his compensation beyond that provided for by the trust, without the consent of the other parties in interest, than it would have had to decrease it without his consent." *Southern Ry. Co. v. Glenn,* 98 Va., 299, 313.

"It is next contended by appellants that the trustee was entitled to charge only reasonable compensation for the services performed by him as such trustee. Ordinarily, that is true, but that rule of law is inapplicable where the amount of the compensation to be paid had been fixed by contract." *Ladd v. Pigott,* 114 S. W. (Mo.), 985.

"Where the instrument creating the trust fixed the compensation of the trustee, it must prevail." *Biscoe v. State,* 23 Ark., 592, 598.

We therefore conclude, as there is no allegation of fraud, undue influence, oppression or usury, that his Honor was in error in reducing the amount provided for in the deed of trust as compensation for the trustee, and that he is entitled to 3 per cent upon the proceeds of the sale, according to the agreement of the parties, and proceeds of sale means what the land sold for.

In *Loftis v. Duckworth,* 146 N. C., 344, the commissions of the trustee were confined to the debts secured in the deed of trust, and not allowed on the amount for which the property sold, because this was the express provision of the deed of trust.

2. Is the defendant trustee entitled to charge, as a part of the expense of sale, $69.30 for advertising in the *News and Observer* for thirty consecutive days? We think not.

The parties to a trust deed have the right to make a special agreement as to how the property shall be advertised for sale, in addition to statutory requirements, and may provide for additional expenditures for that purpose, but the deed of trust in this case follows very closely the language of section 641 of the Revisal, which provides: "No real

property shall be sold under execution, deed in trust, mortgage, or other contract hereafter executed, until notice of said sale shall be posted at the courthouse door and three other public places in the county for thirty days immediately preceding such sale, and also published for four weeks in some newspaper published in the county, if a paper is published in the county: *Provided,* the cost of such newspaper publication shall not exceed $3, to be taxed as cost in the action, special proceeding or proceeding to sell."

The advertisement contemplated by this section in the newspaper is once a week for four weeks, and in the absence of an agreement to the contrary, only $3 can be allowed for this item of expense. The small amount allowed by the statute gives clear indication that it was not intended that the notice in the newspaper should be published for thirty consecutive days.

3. Is the trustee entitled to the allowance of $25 for an attorney's fee?

A trustee has the right to employ counsel to aid him in the execution of his trust, and a court of equity may make reasonable allowance for the services rendered, but he cannot employ counsel at the expense of the trust estate when it is not necessary. *Day v. Davis,* 107 N. C., 270; *Knights of Honor v. Selby,* 153 N. C., 208.

In the first of these cases, *Merrimon, C. J.,* speaking for the Court, says: "There is no statutory provision in this State, that has been brought to our attention, or within our knowledge, that prescribes or authorizes an allowance of compensation directly to the counsel of commissioners charged with a particular duty by an order of court, or otherwise, or to counsel of trustees, whatever may be the nature of the trusts wherewith they may be charged. Nor is there any general rule of practice prevailing in courts that permits such allowances to be made. In the absence of statutory provision, the courts, in the exercise of chancery powers, make allowances to commissioners and trustees in appropriate cases, and such allowances are sometimes enlarged so as to embrace reasonable compensation to counsel of such commissioners or trustees in cases where counsel is necessary to a proper discharge of their duties, but in such cases the courts are careful to see that the services were necessary, that the charges are reasonable and are charged against the proper parties."

Applying this principle, we do not think the attorney's fee ought to be charged against the defendant Leach. The trustee had already executed his trust, except he had not paid the surplus in his hands to the trustor, and he was made a party to this action only for the purpose of attaching the fund in his hands. He had nothing to do with the action except to state the amount in his hands, and is not interested in the result except to obtain his commissions.

This will be certified to the Superior Court with directions to enter judgment in accordance with this opinion. The costs of the appeal will be divided between the defendants.

Reversed.

WALKER, J. Concurring fully with the Court in the opinion that Mr. Pace, as trustee, is entitled to commissions on the entire proceeds of the sale, and not merely to the extent of the indebtedness, and at the rate fixed by the deed, I am unable to agree with my brethren that he is not entitled to even the *actual* cost and expense of advertising the sale, though paid by him, beyond the amount of $3, which is fixed by law for advertising sales. In my judgment, Revisal, sec. 641, as to the cost of advertising, applies only where the sale is made by the court, as will appear from the proviso, which is that "the cost of such newspaper publication shall not exceed $3, to be taxed as costs in the action, special proceeding or proceeding to sell." It plainly means that the court ordering the sale shall not allow more than that amount, and when you say, "shall be taxed as cost in the action," you refer necessarily to a judicial proceeding. Besides, this sale was required to be advertised, not for four weeks, but for thirty days, which is more than four weeks.

In the absence of fraud, undue influence or some other vitiating element, parties may freely contract with each other. If a debtor, when giving a mortgage with a power of sale, wishes to provide that notice of sale shall be advertised for a longer time than four weeks, or thirty days, or even sixty days, in order to secure the widest publicity of the sale, I can see no good reason why he should not be permitted to do so, if he is willing to pay for it; and not being against good morals or any established public policy, and the contract being free from fraud, undue influence or oppression, it would be an interference with the freedom of contract to forbid that he should do so. Whether the trustee has paid an unreasonable amount for the advertisement, or is about to pay it, raises a different question, and the reasonableness of the amount should be determined by the court below, which should find the facts, and decide thereon whether it is reasonable or not. If it is the usual amount charged, and prudent men paid for such service, and it was paid, in good faith, for the purposes of executing the trust, we do not see why he should not be entitled to an allowance of the full amount. How, otherwise, could he perform his duty as trustee, under the terms and directions of the deed? He must advertise in a newspaper, for the deed so requires, and he must pay what is usually charged or be refused the service. What is he to do? The trustor has directed him to do that particular thing, and promised to pay for it—not $3, but what it reasonably costs to have it done. He should not be ex-

pected to pay the difference out of his own pocket, when the service is not rendered to him individually, but as trustee, and he derives no personal benefit from it, but is acting solely for another who has requested him to do the act, or perform the service, and agreed to reimburse him for his outlay.

It was said in *McIver v. Smith,* 118 N. C., 73, in reference to advertisement by a mortgagee: "The mortgage fails to specify the manner of advertising, but simply states that after advertising, the mortgagee may sell on default. A mortgage is a contract, and the parties may affix such terms and conditions as they see fit, provided creditors or others interested at the time are not affected thereby." The original statute brought forward in Revisal, sec. 641, was passed to remedy a certain evil. Property was being advertised only at the courthouse, by posting there, and also at three or four public places elsewhere. This was found to be subject to abuse, to the prejudice of the mortgagor or trustor, and, therefore, a more effective method of giving notice was resorted to, so that there would be more bidders and greater competition, insuring a higher price. It was not intended to prevent the parties from so arranging by agreement among themselves that there should be a more extended advertisement so as still further to attract bidders and stimulate competition, for it was the object of the statute itself to do that very thing, though not so elaborately, on account of the expense, leaving to the parties to contract for additional time of advertisement, if so desired.

It is generally held elsewhere that a trustee is entitled to the commissions, and the costs and expenses of executing the trust, as stipulated in the instrument creating the trust. 27 Cyc., 1500, 1501. It is there stated that a trustee, "if it is so provided in the deed, or by contract of the parties, may retain out of the proceeds (of the sale) his fixed fee or commissions," and further, that this rule also extends, in its application, to "the cost of printing and publishing the notices or advertisements of the sale," which is "incurred in connection with the sale," and this is true, even though the sale proves ineffective, if the attempt to sell was made in good faith, and the abortiveness of it was not due to any fault of the trustee; and he is also entitled to any other proper and legitimate items of expense to be charged against the proceeds and taken out by him. 27 Cyc., 1502.

It was said by the present *Chief Justice* in *Turner v. Boger,* 126 N. C., at p. 302: "It is true that a stipulation for compensation for making the sale, in addition to actual expenses, if reasonable, would be sustained," unless a cloak for usury. There is no suggestion of it here. *Judge Daniels* has found that the cost of advertising was reasonable, and should be paid by the trustee. The deed of trust provides the same kind of notice to be published in the newspaper as at the courthouse,

that is, for thirty running or consecutive days. There is nothing in the wording of the deed to show that the parties intended it to be once a a week for four weeks. That would be substituting the language of the court for that of the parties. Besides, it may also be said, in proof of what they meant, that Mr. Pace, the trustee, advertised daily in the *News and Observer,* according to the requirement of the deed, as *he* understood. His construction of it, and especially his act in reference to the kind of advertisement, was fully approved and indorsed by Mr. Leach in his note to Mr. Pace, dated 6 May, 1915, referring specially to the advertisement, and directing him to retain said costs and expenses of sale, and his commissions, and to make deed to Miss Dixie Leach, the purchaser, as he had arranged for the surplus, and he further acquits Mr. Pace of all liability to him for so dealing with the proceeds. How can language be stronger to express the clear understanding of the parties, and where is there now any ground of complaint left to the trustor? He not only agreed to pay the amount, now disputed, but afterwards ratified what the trustee had done, with full knowledge of the facts.

The Court held, in *Rish v. Ivey,* 76 Ga., 738, that a requirement that advertisement be made in a newspaper for thirty days was not complied with by inserting it once a week for four weeks. This matter does not depend upon the law in regard to sales under executions, nor is there any analogy thereto, or any inference to be drawn therefrom, contrary in effect to the view herein taken, as the question depends for its solution entirely on the contract of the parties. 39 Cyc., 493, 494.

As to the attorney's fees, I will readily concede that if Mr. Pace was required only to pay the net balance in his hands to Miss Leach, he would not be entitled to any fee for his attorney, as that required no professional assistance, being merely an act to transfer expressly directed by the deed. But he was compelled to do more than the simple act of payment. An attachment was issued in this action and levied on the fund in his possession, as trustee, and a complaint filed alleging that the deed of trust was fraudulent and void as against the trustor's creditors, and praying that the surplus be applied to the payment of his debts and to the satisfaction of his wife's dower interest in the land. The trustee could not, under the circumstances, admit these allegations to be true by not denying them, for his failure to deny them would, under the statute, Revisal, sec. 503, be equivalent to an admission of them. If the plaintiff, before the sale, had attacked the trust, it would have been the duty of the trustee, as we have decided, in *Belcher v. Cobb, ante,* 689, to defend in behalf of the trustor, and if he had failed to do so, he would have been liable for his inaction or delinquency, and this must also be true as to the fund or any part thereof after a sale of the property, and still more true, as he has actual possession of the

fund, and the creditor seeks to divert it from the original purpose in a way contrary to the directions of the deed.

It is said in 39 Cyc., pp. 339, 340: "A rule which has been applied in a great variety of cases affecting the administration and execution of trusts, is that a trustee has a right, whenever necessary to the proper administration, preservation, and execution of the trust and the prosecution or defense of actions, to employ counsel and to be reimbursed from the trust estate for whatever sums he has paid for the services of such counsel. The rule is applicable, even though the *cestuis que trustent* employed counsel to represent the same interests, and although, to a certain extent, the private and personal interests of the trustee may also be involved in the litigation. Counsel fees are a charge on the trust fund, however, only when they are reasonably necessary and proper, and contribute to the due administration of the trust." They are, of course, not allowable for services made necessary solely by the fault or maladministration of the trustee. Many courts even hold that if the professional services are rendered by the trustee himself, being an attorney at law, he may be allowed for them, thereby repudiating the English rule. 39 Cyc., 484, 485.

*Chancellor Kent,* in answer to an inquiry from a member of this Court, many years ago, gave it as his opinion that the English rule of not compensating trustees had not met with favor in this country because of our law in regard to public trustees, such as guardians, executors, administrators and receivers, and that the English rule had been greatly relaxed, if not totally abolished, by decisions in this country, so that now the courts allow conventional trustees to contract for their own compensation, in the form of commissions, besides reimbursing their expenses, which include an attorney's fee, and, when the agreement is silent, they will fix the charge for their services at a reasonable amount. *Boyd v. Hawkins, supra.* Mr. Pace was not bound to rely on his own professional skill, but had the right to seek independent advice and the services of an attorney to file his answer and take care of his fiduciary interests. All this is well supported by authority. *Fox v. Fox,* 250 Ill., 384, 395; *Grimball v. Cruse,* 70 Ala., 534, 539; *Nesbitt v. Woodburn,* 190 Ill., 283, 298; *Manderson's Appeal,* 113 Pa. St., 631, 634; *Abend v. End. Fund. Com.,* 174 Ill., 96, 106; *Cochran v. Richmond R. R. Co.,* 91 Va., 339, 342.

In one of the cases it is said that perilous indeed would be the position of a trustee if the law required him to protect and guard the trust fund in litigation at his own expense, and by his unaided efforts, and further, that the trust may be lawfully called upon to bear the necessary expenses of its own preservation, and among these are reasonable counsel fees paid to an attorney for properly appearing in court and presenting the trustee's side of the questions of doubt or controversy,

they being a proper charge on the trust fund, which is benefited by such service. If he had let go the fund without a contest, the consequences to him, as well as to the trustor, might have been serious. He could, at his option, advise himself and otherwise perform an attorney's part in the case, but it has grown into an adage of long standing that a man who is his own attorney has not a very wise or discreet client, however expert and skillful he may be. In this case the services of an attorney were necessary, and the amount allowed to him seems to have been reasonable.

In regard to the controlling effect of the express stipulations in the deed of trust, as to compensation and other matters, and for the proposition that the "agreement constitutes the law of the particular case, and as such it will be enforced," many authorities here and elsewhere may be cited. Jones on Mortgages (6 Ed.), sec. 1923; *College of Charleston v. Willingham,* 30 S. C. Eq., 195; *In re Schell,* 53 N. Y., 263, 265; *Jackson v. Jackson's Exrs.,* 3 N. J. Eq., 96, 113; *Meacham v. Sternes,* 9 Paige's Chancery Reports (N. Y.), 398, 404; *Southern Ry. Co. v. Glenn,* 98 Va., 299, 313; *Ladd v. Pigott,* 114 S. W. (Mo.), 984; *Biscoe v. State,* 23 Ark., 592, 598. And especially as to the necessity of advertising strictly according to the requirements of the deed, the following cases apply: *Eubanks v. Becton,* 158 N. C., 230; *Ferebee v. Sawyer,* 167 N. C., 200; *Brett v. Davenport,* 151 N. C., 56. Defendant's counsel in his brief cites quite an array of cases in support of those propositions. We may add, that the judge held both the cost of advertising and the fee to be reasonable in amount, and considering what is necessary to insert in an advertisment, under this deed, including the recital of the power and the description of the land, it clearly appears that the ruling was right as to the cost of advertising. The fee is not only reasonable, but very moderate, for the service to be performed. The Court in *Harris v. Martin,* 9 Ala., 895, said that the inquiry is not what such services are usually rated at, but the compensation of the attorney is fixed by ascertaining what a prudent trustee would feel authorized to pay an attorney, taking in consideration all the circumstances of the case, though the usual rate charged is entitled to some weight in making the estimate of a reasonable reward for the professional service, and the same is true as to the cost of advertising. But, in any view of the question, the judge's ruling was correct. *Ky. Natl. Bank v. Stone,* 93 Ky., 623; *In re Edward Schell, Trustee,* 53 N. Y., 263; *Mitchell v. Holmes,* 1 Md. Ch., 287.

I agree, therefore, with *Judge Daniels,* that defendant W. H. Pace should be allowed the full amount paid for advertising the sale, and also the attorney's fee.

JUSTICE BROWN concurs in the dissenting opinion of JUSTICE WALKER.